1

2

3

4

5

6           UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
7                  AT SEATTLE

8  TROY S. MADSEN,

9                      Plaintiff,              Case No. C13-752-MJP-BAT

10          v.                                 **REPORT AND**
                                               **RECOMMENDATION**
11 CAROLYN W. COLVIN, Commissioner of
   Social Security,
12
                      Defendant.
13

14        Troy S. Madsen appeals the denial of his benefits applications contending the ALJ erred

15 by (1) failing to find psychotic disorder was a severe impairment at step two, (2) improperly

16 discounting his testimony, and (3) misevaluating the medical evidence and thus his residual

17 functional capacity ("RFC").  Dkt. 11.  As discussed below, the Court recommends

18 **REVERSING** the Commissioner and **REMANDING** the case for further administrative

19 proceedings pursuant to sentence four.

20                    **BACKGROUND AND ALJ'S DECISION**

21        Mr. Madsen is currently 42 years old, has a 10th grade education, and has worked as a

22 manual laborer.  His June 15, 2010 application for benefits, alleging disability as of January 30,

23 2009, was denied initially and on reconsideration.  After conducting a hearing on December 7,

REPORT AND RECOMMENDATION - 1

2011, the ALJ issued a decision finding:

> **Step one:**  Mr. Madsen last worked on June 10, 2010.
>
> **Steps two and three:**  Borderline intellectual functioning, major depressive disorder, personality disorder, and mild degenerative disc disease of the thoracic spine were severe impairments; these impairments failed to meet the requirements of a listed impairment.
>
> **RFC:**  Mr. Madsen could perform medium work limited to simple, repetitive, and routine tasks, limited public contact, and no tandem work with co-workers.
>
> **Steps four and five:**  Mr. Madsen had no past relevant work history but was not disabled because there were jobs in the national economy he could perform.

Tr. 20-31.  As the Appeals Council denied Mr. Madsen's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-6.

## DISCUSSION

**A.      The ALJ did not err at step two**

Mr. Madsen's contention that the ALJ erred at step two in failing to find psychotic disorder was a severe impairment is not supported by the record.  At step two, Mr. Madsen had the burden to show psychotic disorder was both a medically determinable impairment and that it was severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  Mr. Madsen fails to meet this burden because he has not shown psychotic disorder is a medically determinable impairment. The record indicates Nebyu Hailemariam, MHP, MSW, was the only individual who diagnosed Mr. Madsen with psychotic disorder.  Tr. 244.  But an acceptable medical source is required to establish the existence of a medically determinable severe impairment, and Mr. Hailemariam, as an MSW, is not such a source.  20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians, either medical or osteopathic doctors).  Mr. Madsen presented no argument to the contrary in his opening brief.  Instead, he claims reversible error for two reasons.  First, he contends the ALJ should have found psychotic disorder was a severe impairment because Mr.

Madsen "described delusional thought throughout the record." Dkt. 11 at 6.  However, Mr. Madsen's personal descriptions of the effects of his mental problems are "symptoms" and are insufficient to establish a mental impairment is medically determinable.  20 C.F.R. § 404.1508 (a).

Next, Mr. Madsen contends psychotic disorder is a severe impairment because several doctors thought his functioning was being affected by symptoms ostensibly related to psychotic disorder, such as delusions and hallucinations.  Dkt. 11 at 6-7.  This argument is off-point.  As noted above, Mr. Madsen has not shown psychotic disorder is medically determinable, which is a requirement that must be met before an ALJ is required to consider any symptoms related to the disorder.  Nevertheless, Mr. Madsen argues in his reply brief, "psychotic disorder" is medically determinable because David Widlan, Ph.D., diagnosed him with schizophrenia, paranoid type and made findings consistent with a psychotic disorder.  Dkt. 13 at 2-3.  But the claimed error raised in the opening brief is the ALJ's failure to specifically find "psychotic disorder" was a severe impairment, Dkt. 11 at 1, and not the failure to find schizophrenia was a severe impairment.  Hence, Mr. Madsen's reliance on Dr. Widlan, who did not diagnose "psychotic disorder," does not establish that the ALJ erred in failing to find psychotic disorder was a severe impairment at step two.

Additionally, a close review of the record shows that even if the doctors relied upon by Mr. Madsen in his step two arguments indicated he had mental health symptoms that may suggest he might have psychotic disorder, none of the doctors made findings that were sufficient to establish psychotic disorder was a medically determinable impairment for purposes of a step two finding.  A mental impairment is medically determinable only if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable

1   clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1508.  To be medically

2   determinable, a mental impairment must be established by medical evidence consisting of signs

3   and laboratory findings.  *Id.*  Symptoms are the claimant's own descriptions of his mental

4   impairment, which as noted above are insufficient.  Signs are physiological or psychological

5   abnormalities that can be observed, apart from the claimant's statements; signs must be shown

6   by medically acceptable clinical diagnostic techniques.  20 C.F.R. § 404.1528(b).  Psychiatric

7   signs are medically demonstrable phenomena that indicate specific psychological abnormalities,

8   such as abnormalities of behavior, mood, thought, memory, orientation, development, or

9   perception.  *Id.*  Signs must be shown by observable facts that can be medically described and

10  evaluated.  *Id.*  Laboratory findings are anatomical, physiological, or psychological phenomena

11  that can be shown by the use of medically acceptable laboratory diagnostic techniques.  20

12  C.F.R. § 404.1528(c).

13          Here, there is no evidence that any of the doctors upon which Mr. Madsen relies made the

14  requisite findings necessary to show psychotic disorder was medically determinable.  The record

15  contains references to psychotic disorder but there is nothing showing the disorder was ever

16  diagnosed by an acceptable medical source utilizing acceptable diagnostic techniques.  Lacking

17  this evidence, Mr. Madsen focuses on the effects of the symptoms he reported to his doctors

18  without first establishing psychotic disorder was medically determinable.  In such a situation,

19  where there are no medical signs or laboratory findings to substantiate the existence of a

20  medically determinable impairment, the ALJ must find the claimant not disabled at step two,

21  regardless of how many symptoms a claimant alleges or how genuine the complaints to his

22  doctors may appear to be.  SSR 96-4p.[1]

23  _____

[1] SSRs do not have the force of law.  Nevertheless, they "constitute Social Security

REPORT AND RECOMMENDATION - 4

1    The Court also notes and rejects Mr. Madsen's contention that the ALJ must "consider

2    the effects of Mr. Madsen's impairments in combination," including the effects of psychotic

3    disorder.  Dkt. 11 at 6.  The contention implies an ALJ must consider the "effects" of all

4    conditions including those that are not medically determinable impairments.  The argument fails

5    because an ALJ "must consider only limitations and restrictions attributable to medically

6    determinable impairments," and psychotic disorder is not such an impairment here.  SSR 96–8p

7    (RFC is an assessment of the extent to which an individual's medically determinable

8    impairments cause limitations affecting a claimant's work capacity).

9         In sum, psychotic disorder is not a medically determinable impairment because there was

10   no medical diagnosis establishing the disorder, and the only diagnosis made came from Mr.

11   Hailemariam, who is not an acceptable medical source.  Although the record contains notations

12   regarding psychotic disorder, the record contains nothing showing that an acceptable medical

13   source using medically acceptable clinical and laboratory diagnostic techniques made findings

14   sufficient to show psychotic disorder was medically determinable.  Absent such evidence, Mr.

15   Madsen's statements about his symptoms are insufficient to show psychotic disorder is medically

16   determinable.  The ALJ accordingly did not err in finding psychotic disorder was not a severe

17   impairment and did not err in not considering the symptoms and limitations that Mr. Madsen

18   claims are attributable to the condition.

19   **B.      The ALJ erred in discounting Mr. Madsen's testimony**

20        The ALJ found Mr. Madsen less than fully credible.  Mr. Madsen concedes that even if

21   _____

22   Administration (SSA) interpretations of the statute it administers and of its own regulations," and
     are binding on all SSA adjudicators.  20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d
     1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such rulings are given deference by the courts

23   "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*,
     882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION - 5

1  the ALJ erred in discounting his testimony about his physical limitations, the error was harmless

2  because "the record does not support a finding he is more exertionally limited than what the ALJ

3  concluded." Dkt. 11 at 8. He asserts however, the ALJ erred in discounting his testimony about

4  his mental or non-exertional limitations. *Id.* The ALJ noted and rejected Mr. Madsen's

5  testimony that "he experienced anxiety and panic attacks," and "was unable to work because he

6  cannot be around people" for three reasons: (1) it was unsupported by the medical evidence; (2)

7  it was inconsistent with Mr. Madsen's daily activities; and (3) Mr. Madsen's descriptions of his

8  symptom were "vague or evasive." Tr. 25.

9       Turning to the first reason, the ALJ's finding that "the medical evidence of record does

10  not support the degree of severity" Mr. Madsen claimed is flawed. Tr. 26. To begin, the ALJ

11  improperly relied upon "Exhibit 3F/3," *id.*, which is an evaluation that indicated no physical or

12  functional limitations, even though that evaluation did not pertain to Mr. Madsen and was

13  subsequently removed from the record in this case. *See* Tr. 196.

14       Next, the ALJ's finding that Mr. Madsen's testimony was unsupported by the medical

15  evidence focused upon medical findings regarding Mr. Madsen's cognitive abilities. The ALJ

16  recounted how a July 2007 evaluation showed Mr. Madsen "had good recall, was able to perform

17  serial threes with only one error, and was able to complete three-step commands"; an October

18  2008 evaluation showed borderline intellectual functioning; an April 2009 evaluation showed

19  moderate limits in ability to understand, remember, and follow complex instructions; a July 2010

20  evaluation showed limits in ability understand, remember, and follow simple instruction; and so

21  forth. Tr. 26-27. But this evidence does not undercut Mr. Madsen's testimony because he didn't

22  claim his cognitive limitations precluded work. Rather, he claimed he could not work due to

23  anxiety, panic attacks, and not being able to be around people.

REPORT AND RECOMMENDATION - 6

1    Additionally, the ALJ's use of those portions of the medical record regarding Mr.

2   Madsen's cognitive limitations to discount his testimony was impermissibly selective and failed

3   to capture all of Mr. Madsen's limitations.  For example, while the ALJ noted the July 2007

4   evaluation showed Mr. Madsen "had good recall, was able to perform serial threes with only one

5   error, and was able to complete three-step commands," the ALJ did not mention the evaluator

6   also opined that Mr. Madsen's mental health problems caused severe limitations regarding social

7   withdrawal, motor agitation, and the ability to work appropriately with co-workers and

8   supervisors, and the ability to tolerate the pressure and expectations of a normal work setting.

9   Tr. 179-80.

10    Similarly, while the ALJ noted the April 2009 evaluation showed Mr. Madsen had

11   moderate limits in his ability to understand, remember, and follow complex instructions, the ALJ

12   failed to mention the evaluator also opined Mr. Madsen had moderate impairments in his ability

13   to work appropriately with co-workers and supervisors, interact with the public, and tolerate the

14   pressure and expectations of a normal work setting.  Tr. 232.  The ALJ's discussion of Charles

15   Quinci's Ph.D., evaluation is the only instance in which the ALJ discussed more than Mr.

16   Madsen's cognitive limitations. Yet even this discussion omitted some of the doctor's findings.

17   The ALJ noted Dr. Quincy's opinion that Mr. Madsen had mild limits in his ability to interact

18   with the public and moderate limits in his ability to interact with coworkers and supervisors.  Tr.

19   27.  But the ALJ omitted the doctor's opinion that Mr. Madsen had poor judgment and insight,

20   Tr. 255, and moderate limitations in the ability to respond to and tolerate the pressure and

21   expectations of the normal workplace due to "limited copying and stress mgmt skills."  Tr. 252.

22   In short, the ALJ discounted Mr. Madsen's testimony by excluding, without explanation, those

23   portions of the medical opinions that tended to buttress Mr. Madsen's claims.  *Id.*

REPORT AND RECOMMENDATION - 7

1     Hence, the medical record shows Mr. Madsen's testimony that "he cannot be around

2     people" is not inconsistent with the opinions of several doctors, who found he had moderate to

3     severe problems with social withdrawal, ability to work appropriately with co-workers and

4     supervisors, and ability to tolerate the pressure and expectations of a normal work setting.  Any

5     interpretation otherwise would not be supported by substantial evidence.  *See Edlund v.*

6     *Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (holding ALJ failed to provide substantial

7     evidence for rejecting a psychologist's examination report where, inter alia, the ALJ "selectively

8     focused on aspects of [the] report which tend[ed] to suggest non-disability").[2]

9     The ALJ also discounted Mr. Madsen's testimony on the grounds that he was able to use

10    public transportation, "indicating an ability to follow basic instructions," and because he

11    "watches television, and plays card games," which indicate "more cognitive functionality than

12    alleged."  Tr. 27.  These daily activities, which again focus on Mr. Madsen's cognitive

13    limitations, are invalid reasons to discount Mr. Madsen's testimony; as discussed above, Mr.

14    Madsen testified he could not work due to problems being around people related to anxiety and

15    panic attacks, and not because of his cognitive limitations.

16    And finally, the ALJ discounted Mr. Madsen's testimony because his descriptions of his

17    symptom were "vague or evasive."  Tr. 25.  The ALJ did not find malingering, thus the ALJ was

18    required to make findings stating clear and convincing reasons to reject Mr. Madsen's testimony.

19    *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).  Here, however, the ALJ failed to

20    provide clear and convincing reasons because the ALJ did not explain why or how Mr. Madsen's

21

22    [2] The Court notes there is a distinction between an ALJ's finding that a claimant's testimony is
      inconsistent with the medical evidence, and an ALJ's findings regarding the medical evidence.
      While the ALJ erred in discounting Mr. Madsen's testimony as inconsistent with the medical

23    evidence, the ALJ did not err in evaluating the medical evidence, as discussed in the next
      section.

REPORT AND RECOMMENDATION - 8

1 testimony was so vague or evasive that it diminished his credibility.  The Commissioner's

2 defense of the ALJ fails to point to anything in the ALJ's decision or in the record that supports

3 the ALJ's findings.  Dkt. 12 at 6.  Instead, the Commissioner argues the ALJ properly discounted

4 Mr. Madsen's testimony based on his work record.  This argument fails because the ALJ did not

5 specifically find Mr. Madsen lacked credibility due to his work record.  As the ALJ did not

6 specifically rely on this ground, neither can the Court.  *See Bray v. Comm'r of Soc. Sec. Admin.*,

7 554 F.3d 1219, 1225 (9th Cir. 1995) (court reviews an ALJ's decision "based on the reasoning

8 and findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the

9 adjudicator may have been thinking.").

10 **C.   The ALJ's evaluation of the medical and other source evidence**

11         Mr. Madsen contends the ALJ erroneously evaluated the opinions of William Wilkerson,

12 Ed.D., Shawn Kenderline, Ph.D., Charles Quinci, Ph.D., David Widlan, Ph.D., Alex Fisher,

13 Ph.D., Bruce Eather, Ph.D., and Nebyu Hailemariam, MHP, MSW.  Dkt. 11 at 14.

14         *1.     William Wilkerson, Ed.D. – Examining Psychologist*

15         Mr. Madsen argues the ALJ erroneously disregarded Dr. Wilkerson's October 30, 2008

16 evaluation findings because "they were given prior to the alleged onset date."[3]  Dkt. 11 at 16.

17 This argument lacks merit.  First, an ALJ need not discuss evidence that is not significant or

18 probative, *see Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), and Dr. Wilkerson's

19 October 2008 evaluation was not probative because it pre-dated Mr. Madsen's alleged disability

20 onset date, *see Lockwood v. Comm'r of Soc. Sec. Admin.*, 397 Fed. Appx. 288, 290 (9th Cir.

21 2010) (unpublished).  Hence, the fact the ALJ did not discuss the 2008 evaluation in detail is not

22

23 [3] The ALJ's decision indicates Dr. Quinci made findings prior to the onset date.  Tr. 28.  This is a typographical error because the ALJ cites to portions of the record indicating she meant Dr. Wilkerson, not Dr. Quinci.  *Id.*

1    harmful error.

2          Second, even though the ALJ was not required to consider the pre-onset evaluations, the

3    ALJ did consider them and found that they were consistent with the ALJ's RFC assessment.  Mr.

4    Madsen disagrees, but his disagreement is based on an overstatement of the doctor's October

5    2008 opinion.  Citing to Tr. 224, Mr. Madsen claims the doctor "clearly opines Mr. Madsen is

6    unable to learn tasks adequately and would require a significant trial work period."  Dkt. 11 at

7    16.  But the record shows otherwise.  In his October 2008 evaluation, Dr. Wilkerson stated:

8                    Troy would be challenged to learn via education or training when
                     it came to vocational/occupational functioning. . . . It is unclear as
9                    to the status of his recovery, the level of his past or current
                     [drug/alcohol] usage and it would be critical that he remain
10                   abstinent.  Based on the number and chronicity of his concerns
                     (physical, intellectual, learning, mental health and chemical
11                   dependency), along with the orchestrated effort and resources that
                     would be required for a work trial, which would be several years,
12                   he should continue with is social security application.

13   Tr. 224.  As shown above, the doctor found Mr. Madsen "was challenged to learn," not that he

14   was **unable** to learn.  Additionally, Mr. Madsen's disagreement with the ALJ's findings does not

15   account for how Dr. Wilkerson in his other pre-onset opinions found Mr. Madsen had moderate

16   limitations in the ability to learn new tasks.  *See* Tr. 199 (April 10, 2008 evaluation); Tr. 208

17   (September 25, 2008 evaluation).  These opinions are consistent with Dr. Wilkerson's post-onset

18   date opinion of April 23, 2009, that Mr. Madsen had moderate limitations in the ability to learn

19   new tasks.  Tr. 232.  Given the doctor's findings, the Court cannot say it was unreasonable for

20   the ALJ to conclude that a RFC assessment limiting Mr. Madsen to simple, repetitive, routine

21   work accounted for the moderate task learning limitations Dr. Wilkerson found.

22        *2.     David Widlan, Ph.D. – Examining Psychologist*

23          The ALJ rejected Dr. Widlan's, opinion that Mr. Madsen was severely limited in his

REPORT AND RECOMMENDATION - 10

ability to perform routine tasks without undue supervision, to maintain appropriate behavior in the work setting, to communicate and perform effectively in a work setting, and to be aware of hazards.  Tr. 28.  The ALJ properly rejected these opinions as inconsistent with the doctor's own examination findings.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject examining doctor's opinions where unsupported by the doctor's own medical records).  Here, the ALJ found Mr. Madsen's good performance during the mental status exam administered by Dr. Widlan was inconsistent with the doctor's opinion Mr. Madsen was severely limited.  Mr. Madsen does not contend the ALJ erred in making this finding but instead argues the ALJ erred by disregarding Dr. Widlan's observations of paranoia and irritability, and "diagnosis of psychotic disorder."  Dkt. 11 at 17.

The record does not support this argument.  Dr. Widlan noted "psychosis" was an "impairment/symptoms claimed by individual," Tr. 314, but did not diagnose "psychotic disorder" as Mr. Madsen claims.  Dr. Widlan's evaluation also contained a conflict in that though the doctor wrote he observed paranoia and irritability, he also stated in his mental status exam, Tr. 315, that Mr. Madsen's general appearance was within normal limits, that his mood and affect was depressed and blunted, and that there were "no suicidal ideal; paranoia and auditory hallucinations" Tr. 319.  Similarly while Dr. Widlan listed under "Assessment/Diagnosis," "schizophrenia/paranoid type," Tr. 315, he reported in direct conflict with the diagnosis that Mr. Madsen "presented to this examiner with negative symptoms associated with schizophrenia including blunted effect," Tr. 317.  Given the numerous inconsistencies in the doctor's evaluation, the ALJ did not err in discounting Dr. Widlan's opinions.

### 3.    *Shawn Kenderline, Ph.D. – Examining Psychologist*

The ALJ discounted Dr. Kenderline's 2007 evaluation of Mr. Madsen on the grounds that

1    it pre-dated Mr. Madsen's alleged disability onset date.  As noted above, an ALJ need not

2    discuss or consider evaluations performed prior to a claimant's alleged disability onset date.  *See*

3    *Lockwood*, 397 Fed. Appx. at 290.  Accordingly, Mr. Madsen's argument that the ALJ erred in

4    failing to "discuss abnormal observations noted by Dr. Kenderline including tangential speech,

5    irritability, and impaired stress tolerance," fails.  The Court affirms the ALJ's evaluation of the

6    doctor's opinions.

7           *4.     Charles Quinci, Ph.D. – Examining Psychologist*

8           Mr. Madsen argues the ALJ erred failing to explain why he rejected Dr. Quinci's opinion

9    that he had marked limits in the ability to exercise judgment and make decisions, moderate limits

10   in the ability to respond to the pressures of the workplace, and limited coping skills.  Dkt. 11 at

11   15.  This argument disregards the doctor's ultimate opinion of Mr. Madsen's ability to perform

12   work activity.  Dr. Quinci opined that, despite the impairments he noted, Mr. Madsen

13   nonetheless "could perform basic routing tasks at a competitive pace, understand and follow

14   basic directions, use public transit, if C & S [clean and sober] is capable of maintaining

15   appropriate behavior."  Tr. 252.  Hence, contrary to Mr. Madsen's argument, the ALJ did not

16   disregard limitations found by the doctor.  Rather, the ALJ accepted the doctor's opinion that Mr.

17   Madsen could perform work activity despite his limitations.  The Court accordingly affirms the

18   ALJ's evaluation of Dr. Quinci.

19          *5.     Alex Fisher, Ph.D., and Bruce Eather, Ph.D. – Reviewing Psychologitsts*

20          Mr. Madsen contends the ALJ erred in giving significant weight to reviewing

21   psychologitsts, Drs. Alex Fisher, and Bruce Eather.  Dkt. 11 at 15.  His arguments that the other

22   medical evidence contradicted the opinions of these doctors is foreclosed because, as noted

23   above, the ALJ did not err in evaluating the opinions of the treating and examining doctors.

1    **6.    *Nebyu Hailemariam, MHP, MSW***

2    Mr. Madsen argues the ALJ erred in discounting Ms. Hailemariam's opinions.  Dkt. 11 at

3    17.  His argument that the ALJ erred in finding Drs. Quinci's and Wilkinson's opinions

4    contradicted Ms. Hailemariam's opinions is foreclosed; as noted above, the ALJ did not err in

5    evaluating these doctors' opinions.

6    **CONCLUSION**

7    As discussed above, the Court recommends **REVERSING** the Commissioner's final

8    decision and **REMANDING** the case for further administrative proceedings pursuant to sentence

9    four.  The ALJ committed harmful error in discounting Mr. Madsen's testimony.  In determining

10   a claimant's RFC, an ALJ must assess all relevant evidence, including a claimant's testimony.

11   This did not occur given the ALJ's rejection of Mr. Madsen's testimony.  Remand for further

12   proceedings is appropriate because the Court cannot say that Mr. Madsen's testimony, alone,

13   mandates an award of benefits.  *See McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir.

14   2002) (award of benefits appropriate only if record clearly shows the ALJ would be required to

15   find the claimant disabled).  Accordingly, on remand, the ALJ should reevaluate Mr. Madsen's

16   testimony, develop the record as deemed necessary, reassess Mr. Madsen's RFC if appropriate,

17   and proceed to steps four and five.  The Court affirms the ALJ's step two findings and the ALJ's

18   evaluation of the medical and other source evidence.

19   A proposed order accompanies this Report and Recommendation.  Objections, if any, to

20   this Report and Recommendation must be filed and served no later than **October 2, 2013.**  If no

21   objections are filed, the matter will be ready for the Court's consideration on **October 4, 2013**.

22   If objections are filed, any response is due within 14 days after being served with the objections.

23   A party filing an objection must note the matter for the Court's consideration 14 days from the

REPORT AND RECOMMENDATION - 13

1    date the objection is filed and served.  Objections and responses shall not exceed twelve pages.

2    The failure to timely object may affect the right to appeal.

3          DATED this 18th day of September, 2013.

4

5                                             BRIAN A. TSUCHIDA

6                                             United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 14